In re Will E. ELLWANGER, and Helen Ellwanger, Debtors.

Helen ELLWANGER, Appellant,

v.

BETTE JOYCE McBROOM ESTATE, Appellee.

BAP No. WW 86–1349–AsJMo.

Bankruptcy No. 84–01238–TC.

Adv. No. A84–0209.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Nov. 19, 1987.

Resubmitted Sept. 8, 1988.

Decided Oct. 10, 1989.

Jay C. Immelt, Painesville, Ohio, for appellant.

Gary Wunderlain, Allard, Shelton & O'Connor, Pomona, Cal., for appellee.

Before ASHLAND, JONES and MOOREMAN, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge:

Helen Ellwanger appeals from the bankruptcy court's determination that two debts were nondischargeable pursuant to § 523(a)(2). We reverse and remand.

## FACTS

The disputes in this case center around the probate estate and the will and other testamentary documents of the decedent Bette Joyce McBroom. Prior to her bankruptcy Helen Ellwanger, the daughter of the decedent, and others presented four testamentary documents to Mrs. McBroom. The documents included a power of attorney, a teacher's retirement form, a credit union form, and a will all of which were read aloud to the testator, then signed with witnesses present. The will which was read to the testator provided for a five-way distribution of her estate, with her husband and four children each receiving a one-fifth undivided interest. Mrs. McBroom died a week later.

Helen Ellwanger was appointed administratrix of her mother's estate. After Mrs. McBroom's death the will was not probated by Mrs. Ellwanger. Instead, a quitclaim deed signed by the decedent and giving the family residence to Mrs. Ellwanger was recorded. Subsequently, other family members alleged that Mrs. Ellwanger withheld information about the residence and that she failed to include the property as an asset of the probate estate. Suit was brought against Mrs. Ellwanger and her husband in California Probate Court seeking return of the property to the probate estate.

After a four day trial, the probate court found that Mrs. Ellwanger and her husband had obtained title to the residence by means of fraud, trickery, and forgery, and that the Ellwangers had both knowingly and fraudulently represented that the real property belonged to them. The probate court ordered the property returned to the estate and appointed the decedent's son, Martin McBroom, as the new administrator of the probate estate.

Mr. McBroom brought an action against Mrs. Ellwanger under Cal.Prob.Code § 612 (West 1989). Section 612 imposes a penalty of twice the value of the property on any person that has withheld, embezzled, or concealed property of a decedent from the estate. The probate court determined the value of the residence to be $120,000, and ordered a penalty of $240,000 against the debtor.

Mr. McBroom also brought an action objecting to the inventory filed by Mrs. Ellwanger as administratrix of the probate estate. Mr. McBroom prevailed, and Mrs. Ellwanger was surcharged $53,792.63.

The Ellwangers appealed each of the probate court orders, but the appeals were dismissed because they failed to pay transcript costs. On June 13, 1984 the Ellwangers filed a Chapter 11 petition.

Mr. McBroom as administrator of the probate estate, filed a complaint to determine the judgment debts arising from the probate court's orders nondischargeable under § 523(a)(2), (4) & (6). After a two day trial the bankruptcy court held that the judgments against Will Ellwanger were dischargeable and that the judgment debts against Helen Ellwanger were nondischargeable under § 523(a)(2). The bankruptcy court did not rule on the nondischargeability of Helen Ellwanger's debts under § 523(a)(4) or (6). Helen Ellwanger timely appealed.

## ISSUES

1. Whether the probate court judgments were in error because they were obtained in violation of Cal.Prob.Code §§ 581 and 612.

2. Whether the bankruptcy court's findings of fact were supported by the record.

3. Whether the bankruptcy court erred in determining the surcharge of $53,792.63 to be nondischargeable under § 523(a)(2).

4. Whether the bankruptcy court erred in determining the $240,000 penalty assessed pursuant to Cal.Prob.Code § 612 was nondischargeable under § 523(a)(2).

## DISCUSSION

Mrs. Ellwanger asks this court to determine whether the probate court's judgment was in error. Our task is to review the bankruptcy court's finding that the judgment debts were nondischargeable under § 523(a)(2). This court is not the proper forum to determine whether the probate court properly granted judgment against Mrs. Ellwanger. If an error was made in the probate court the proper recourse was an appeal of that court's decision. *In re Modern Boats, Inc.*, 775 F.2d 619, 621 (5th Cir.1985). Mrs. Ellwanger asserts that an appeal was taken but was dismissed due to attorney error. Even if this was the case, an appeal of an order of the bankruptcy court is not the proper forum in which to review an attorney's error in an underlying probate proceeding.

Mrs. Ellwanger also asserts that the bankruptcy court erred in adopting verbatim certain findings of fact and conclusions of law of the probate court. While it is true that the bankruptcy court has exclusive jurisdiction to determine the dischargeability of a debt and is not bound by a state court ruling on this issue, *In re Houtman*, 568 F.2d 651, 653–54 (9th Cir.1978), it does not follow that a bankruptcy court is precluded from considering and incorporating the state court's findings of fact when making its determination on dischargeability. To the contrary, a state court judgment finding fraudulent conduct by the debtor establishes a *prima facie* case of the nondischargeability of the debt in bankruptcy. *Lawrence T. Lasagna, Inc. v. Foster*, 609 F.2d 392, 396 (9th Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). There was a two day trial held in which the court heard evidence on Mrs. Ellwanger's actions with respect to her mother's will and the quitclaim deed. We conclude that the bankruptcy court did not rely solely on the state court's finding of fraud and the bankruptcy court exercised independent judgment in reaching its decision.

Mrs. Ellwanger contends that the bankruptcy court had insufficient evidence before it to make eleven of its findings of fact and one conclusion of law. Findings of fact are reviewed under a clearly erroneous standard while conclusions of law are reviewed *de novo*. *In re Lansford*, 822 F.2d 902, 904 (9th Cir.1987); *In re Teichman*, 774 F.2d 1395, 1397 (9th Cir.1985). Based upon the May 6, 1985 transcript of the bankruptcy proceeding, we find that the court made one error in its findings of fact. In finding of fact number 5 the bankruptcy court stated, "The documents were identified by BETTE JOYCE McBROOM'S private nurse, SHIRLEY TONE, as a Will, a Power of Attorney, a credit union document, and a Teacher's Retirement form." There is nothing in the record to support this statement, it is therefore, clearly erroneous. However, this has no bearing on the court's ultimate decision that the debts were nondischargeable. If finding number 5 was completely eliminated the court could have come to the same conclusion.

The remaining findings of fact and the conclusion of law that Mrs. Ellwanger objected to are based on circumstantial evidence. The court had before it evidence that on August 24, 1981 a will was read aloud to Bette McBroom in her hospital room, which divided the property equally among her husband and four children except that her son received her diamond ring. However, the document produced after McBroom's death was not the above described will but was a quitclaim deed that gave McBroom's residence to Mrs. Ellwanger. Ellen Quinn, the notary who notarized all the documents signed by McBroom that day, had no recollection and no record of notarizing a quitclaim deed. Quinn testified that she looked at the documents to see what each one purported to be and later recorded the documents. She did not pay particular attention to the nature of the documents she notarized. No one present in the hospital room that day saw or heard mention of a quitclaim deed that was signed by McBroom. The nurse testified that McBroom could not have seen the

quitclaim deed that day because she was the one who passed McBroom the papers and she did not see it. She further testified that the quitclaim deed giving McBroom's entire estate to Mrs. Ellwanger out of "love and affection" was in direct contradiction to the will that was read to McBroom.

The bankruptcy court concluded, among other things, that the will dividing the property equally was intentionally lost, hidden, or destroyed by Mrs. Ellwanger; that she somehow obtained her mother's signature on the quitclaim deed that day without her mother or any other person in the hospital room knowing that it was a quitclaim deed; and that Mrs. Ellwanger embezzled the property and represented to McBroom's heirs that the property belonged to her. The court's legal conclusions state that Mrs. Ellwanger's actions constituted obtaining property by false pretenses, false representations, and actual fraud and the debts to the estate are, therefore, nondischargeable under § 523(a)(2).

We find that the bankruptcy court had sufficient evidence before it to make, and did make, an independent determination regarding the fraudulent acts surrounding the transfer of the decedent's residence to Mrs. Ellwanger. The court merely utilized the probate court's findings in preparing its findings of fact and conclusions of law. There is no question that such a use of the state court's findings is proper. *In re Tilbury*, 74 B.R. 73, 78–79 (9th Cir. BAP 1987), *aff'd*, 851 F.2d 361 (9th Cir.1988).

■ Mrs. Ellwanger further contends that the $53,792.63 surcharge is dischargeable. Mrs. Ellwanger argues in support of this contention that the assets are not estate assets, and, as such, a judgment for embezzlement or concealment of estate assets is invalid.

In direct opposition to Mrs. Ellwanger's assertion, the probate court granted the surcharge as a result of objections filed to the final accounting of the probate estate assets. Specifically the court found estate receipts exceeded disbursements by $20,612.40 and that this amount was not accounted for by Mrs. Ellwanger. In addition, the disbursements claimed in the ac-

counting exceeded the disbursements claimed on the supporting schedules by $1,682. As a result, the charges exceeded the credits for disbursements by $22,294.40, and this amount was not accounted for and was not in the estate.

The probate court also disallowed disbursements claimed by Mrs. Ellwanger in the amount of $17,675.55. The court further found that Mrs. Ellwanger failed to account for assets totaling $10,460.68. The court also found that Mrs. Ellwanger had embezzled and concealed federal and state tax refunds in the amount of $2,681, and was liable under Cal.Prob.Code § 612 for double the value of the refunds.

The probate court allowed $42,193.322 as a credit to the probate estate, representing proceeds from a Home Savings of America loan taken against the decedent's residence. In summary, the court found there were losses to the estate totaling $93,304.54 which were reduced by $42,193.32 and that Mrs. Ellwanger should be surcharged in the amount of $51,111.63. In addition, Mrs. Ellwanger was surcharged $2,681 for the federal and state tax returns for a total surcharge of $53,792.63. The court stated that Mrs. Ellwanger was liable for losses to the estate totaling $51,111.63 arising out of her "malfeasance or misfeasance" and $2,681 as a "penalty for her embezzlement and concealment" of property of the probate estate.

The probate court found that the omission of the $2,681 in tax refunds from the final accounting constituted embezzlement and concealment of property of the decedent. The court did not find that the failure to include any of the other amounts, or the denial of credit for the disbursements was the result of Mrs. Ellwanger's fraud. In fact, the court stated that the surcharge was the result of "malfeasance or misfeasance."

The bankruptcy court in its oral findings simply concluded "as far as the surcharging, ... that was part and parcel of the main action, and, therefore it would also be nondischargeable. It grew out of the same fraud and, therefore, both matters are nondischargeable." Similarly in the findings of fact and conclusions of law the bank-

ruptcy court stated "As a result of Helen Ellwanger's malfeasance or misfeasance as administratrix of the probate estate and as a penalty for embezzlement and concealment of property of the decedent, she was surcharged a total of ... $53,792.63." The bankruptcy court then concluded that the debt was nondischargeable under § 523(a)(2).

■ Since the probate court's order merely surcharged Mrs Ellwanger and did not contain affirmative findings of fraud, the judgment does not establish a *prima facie* case of nondischargeability. As this court stated in *In re Dougherty*, 84 B.R. 653, 656 (9th Cir. BAP 1988) fraud, under § 523(a)(2) must be proven by clear and convincing evidence. *See In re Pascucci*, 90 B.R. 438, 444 (Bankr.C.D.Cal.1988); *see also In re Tilbury*, 74 B.R. 73, 77 (9th Cir. BAP 1987), *aff'd*, 851 F.2d 361 (9th Cir. 1988). The appellee's simply did not meet their burden of proving that the debt arising from the probate court's order was the result of fraud. A review of the record on appeal reveals that the appellees failed to provide any affirmative evidence that the debt was the result of Mrs Ellwanger's fraud. As a result we find that the bankruptcy court erred in finding that the debt was nondischargeable under § 523(a)(2). This leaves open the question of whether the debt was nondischargeable under either § 523(a)(4) or (6). Because the bankruptcy court did not rule on these issues, we remand the case so that the court may determine the dischargeability of the debt under § 523(a)(4) or (6).

■ Finally, Mrs Ellwanger asserts that the $240,000 penalty awarded by the state court pursuant to Cal.Prob.Code § 612 should be discharged. Mrs Ellwanger argues that noncompensatory damages are not included as an exception to discharge under § 523(a)(2). Thus, Mrs Ellwanger contends that § 523(a)(2) limits nondischargeability of a debt to compensation for actual damages and allows penalties and other noncompensatory damages to be discharged.

Section 523(a)(2) precludes dischargeability of a debt for money or property only to the extent that it was obtained by actual fraud. Probate Code § 612 provides:

If any person embezzles, conceals, smuggles or fraudulently disposes of any property of the decedent, he is chargeable therewith, and liable to an action by the executor or administrator of the estate for double the value of the property, to be recovered for the benefit of the estate.

Cal.Prob.Code § 612 (West 1989). In this case Mrs Ellwanger obtained $120,000 in property by her fraudulent conduct. The property was subsequently returned at an appreciated value to the estate. Thus, the property obtained by Mrs Ellwanger's fraudulent conduct would properly have supported a judgment under § 523(a)(2). However, the judgment awarded pursuant to Probate Code § 612 is penal in nature and in no way alters the extent of the damages for money or property obtained by Mrs Ellwanger's fraudulent conduct. The penalty imposed by § 612 did not increase the amount of money. or property which the debtor obtained by actual fraud. The estate was clearly entitled to an award of damages under § 612, but under federal law, specifically § 523(a)(2), a wholly private penalty cannot be the basis for a nondischargeability judgment.

Numerous cases are in accord with this court's holding that exceptions to discharge under § 523(a)(2) are limited to compensatory damages. *See In re Larson*, 79 B.R. 462, 465 (Bankr.W.D.Mo.1987); *In re McDonald*, 73 B.R. 877, 882 (Bankr.N.D.Tex. 1987); *In re Wilson*, 72 B.R. 956, 959–60 (Bankr.M.D.Fla.1987); *In re Brown*, 66 B.R. 13, 16 (Bankr.D.Utah 1986); *In re Suter*, 59 B.R. 944, 946–47 (Bankr.N.D.Ill. 1986); *In re Schmidt*, 36 B.R. 834, 836–37 (Bankr.D.Minn.1984); *c.f. In re Barr*, 54 B.R. 922, 925–26 (D.Or.1984).

The result reached by this court also accords with other provisions of the Bankruptcy Code. Section 523(a)(7) provides for the nondischargeability of a debt owed to a governmental unit for a fine, penalty, or forfeiture that is not compensation for actual damages. Congress specifically created an exception to discharge for noncompensatory damages. In establishing the exception, Congress clearly determined not to allow nongovernmental entities to seek to have penalties and other noncompensato-

**556**

ry damages determined nondischargeable. The Supreme Court in discussing the interpretation of § 523(a)(7) stated:

> ... For explanations of the section by commentators, see 3 Collier on Bankruptcy ¶ 523.17 (15th ed. 1986); 1 W. Norton, Bankruptcy Law and Practice § 27.37 (1982). ...

> It seems likely that the limitation of § 523(a)(7) to fines assessed "for the benefit of a governmental unit" was intended to prevent application of that subsection to wholly private penalties such as punitive damages. See House Doc. No. 93–137, pt. 2, pp. 116, 141 (1973)....

*Kelly v. Robinson,* 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 361–62 n. 13, 93 L.Ed.2d 216 (1986). Congress clearly addressed the question of excepting noncompensatory damages from discharge and determined that only governmental units can avail themselves of the exception. The language of § 523(a)(2) and § 523(a)(7) when read in harmony compels the conclusion that Congress intended noncompensatory damages to be excepted from discharge only where they are owed to a governmental entity. *See generally Suter,* 59 B.R. at 947.

Similarly, § 523(a)(2) as an exception to discharge impairs the debtors fresh start and should be read no more broadly than necessary to effectuate the policy against debtors avoiding debts incurred as a result of their actual fraud. The award of a judgment under Probate Code § 612 is a form of punishment to the debtor and is not compensation for injury to the estate. The estate had recovered the residence by virtue of the probate court's order, and thus has been made whole. To allow collection of an additional $240,000 in nondischargeable debts would result in a windfall to the estate. Section 523(a)(2) & (7) when read together intend the former, that the creditor be made whole, and clearly do not intend the later, that the estate receive a windfall. *See generally Id.* The estate has been adequately compensated by recovery of the residence.

Because the judgment debt arising from application of Probate Code § 612 is in the nature of a private penalty and is not compensation for injury to the estate, the debt falls squarely within the purview of § 523(a)(7). Since the estate is not a governmental entity as required by § 523(a)(7), the debt is dischargeable. As a result, it is not necessary for the bankruptcy court to determine whether the debt in nondischargeable under § 523(a)(4) or (6).

CONCLUSION

The bankruptcy court's determination of nondischargeability of the surcharge judgment in the amount of $53,792.63 plus interest is reversed, and the case is remanded to determine if the debt is nondischargeable under § 523(a)(4) or (6). The bankruptcy court's determination of nondischargeability of the Probate Code § 612 judgment is reversed.